Charles CERMAK and Kathy Cermak, individually and as natural parents and guardians, and on behalf of minor children, Christopher Cermak and Shane Cermak; Milpark Drilling Fluids, a Texas general partnership; Baker Hughes Oilfield Operations, Inc., a California corporation, on behalf of itself and as principal and/or successor in interest to Milpark Drilling, Appellants (Plaintiffs),

v.

GREAT WEST CASUALTY COMPANY, a Nebraska corporation, Appellee (Defendant).

No. 99–168.

Supreme Court of Wyoming.

April 24, 2000.

Representing Appellants: Timothy W. Miller of Reeves & Miller, Casper, WY; C. John Cotton of Cotton Law Offices, Gillette, WY; and J. Stan Wolfe of the Law Firm of J. Stan Wolfe, Gillette, WY. Argument presented by Mr. Miller.

Representing Appellees: Judith A. Studer of Schwartz, Bon, Walker & Studer, Casper, WY. Argument presented by Ms. Studer.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Appellants seek review of the district court's summary judgment in favor of Appellee. We will affirm the summary judgment on the basis that the claim pursued by Appellants was res judicata.

## ISSUES

Appellants advance these issues:

A. Whether the summary judgment for appellee should be reversed.

1. Whether the trial court erred in holding that an insurance agent with express authority to bind appellee was not appellee's agent as a matter of law.

2. Whether the trial court erred in ruling that reformation was barred due to the named insured's alleged failure to read the insurance policy.

3. Whether the trial court erred in ruling that reformation was barred by laches.

B. Whether appellants' motion for summary judgment should have been granted.

1. Whether the insurance policy, as reformed, covers the claims in the underlying case as a matter of law.

2. Whether the insurance policy, as reformed, covers the settlement payment at issue as a matter of law.

3. Whether the insurance policy, as reformed, covers the judgment in the underlying case as a matter of law.

Great West reformulates the issues thus:

A. Did the trial court properly grant summary judgment to Great West based on the undisputed evidence that there was no mutual mistake?

1. Can a unilateral mistake be the basis of a claim for reformation of an unambiguous insurance policy that was accepted?

(a) Should the Court ignore the language of the agency agreement, Wyoming statutes and its own precedent, and find that the insured's agent could obligate Great West beyond its authority to do so as urged by the Appellants?

2. Can Appellants seek equity, despite the failure to request a copy of the policy; the failure to read the policy; the failure to give notice of Cermak's accident; the failure to give timely notice of Cermak's lawsuit; the attempt to set up Great West after Great West correctly declined coverage; the failure to pay a judgment despite having the assets to do so; the failure to obtain a complete settlement; the generation and prosecution of three separate lawsuits as part of their deal; and the taking of an inconsistent position in judicial proceedings and contrary to the underlying agreement?

Stated more succinctly, does the doctrine of laches bar Appellants' claim?

B. Whether the trial court properly denied Appellants' motion for summary judgment.

1. Even if the Court ignores Appellants' conduct and its own precedent to reform the policy, is there coverage? And, if so, should a settlement agreement characterized by collusion, bad faith and unreasonableness be enforced against Great West.

## FACTS

The facts in this matter are labyrinthine and have generated many issues. Perhaps, for that very reason, a fatal flaw in this appeal was not readily discernible. All parties to the instant action filed motions for summary judgment, and there is no dispute about the operative fact which we will set out in this portion of the opinion. The parties do disagree about how those facts interface with the legal principles applicable to the resolution of the various issues raised by the various parties.

Charles Cermak was injured on March 2, 1993, while working on a drilling rig. His wife Kathy and his two minor children are parties for the reason that a claim for loss of consortium and care and services of Charles Cermak was filed in their names. For purpose of simplicity, we will refer to them as "Cermak." Kerr McGee was the operator of the oil field drilling site. Exeter Drilling contracted with Kerr McGee to provide drilling services. Cermak worked for Exeter. Cermak received worker's compensation benefits for his injuries through his employer.

The waters begin to muddy as we relate that Kerr McGee contracted with Milpark Drilling Fluids (Milpark) to provide drilling fluids, or "mud," at the drilling site. Milpark, in turn, contracted with USA Trucking to operate its Casper warehouse, maintain its equipment, and deliver its products to drilling sites. USA Trucking is a major figure in this litigation, and we will refer to it as "USA." Another major player in this case is Baker Hughes Oil Field Operations and its predecessor in interest, Milpark. For purposes of simplicity and clarity, we will refer to Baker Hughes and Milpark as "BHM." BHM and USA entered into a contract called a Consigned Stock Agreement, which we will refer to as the "Agreement." Pursuant to the Agreement, BHM "consigned" its warehouse and the contents of that warehouse into the hands of USA to perform the functions previously performed by BHM employees. For purposes of this litigation, the germane provisions of the Agreement were that USA was: (1) To maintain BHM's equipment in serviceable condition; (2) provide additional insured coverage to BHM on USA's insurance policies (which included: motor truck cargo liability coverage, comprehensive general liability, and comprehensive auto liabili-

ty); and, (3) to be an independent contractor and never to be considered an employee of BHM.

USA obtained its insurance through an insurance agency called Freberg & Company of Wyoming, Inc., and we will refer to it as "Freberg." USA called Freberg and directed an agent to add BHM as an additional insured on its "policy." USA thought of its policy as "a policy," but, as it turned out, it was more in the nature of "policies." The insurer was Great West Casualty Company, and we .will refer to it as "Great West." Freberg was authorized to bind insurance for Great West. Freberg forwarded USA's application to Great West. However, instead of issuing an "Additional Insured Endorsement" (AIE) which showed BHM as an additional insured on all policies, the AIE issued by Great West only showed BHM as an additional insured on USA's auto liability coverage. The record substantiates that Great West did not receive a copy of the Agreement between USA and BHM. The facts surrounding this insurance transaction generated BHM's contention that Freberg was an "agent" for Great West, and that a "mutual mistake" was made when Great West failed to add BHM to all of USA's "policies." That is, BHM contended that USA intended to have BHM added as an additional insured on all policies and Great West, acting through its agent Freberg, also intended that same result. Thus, BHM maintains there was a mutual mistake which is a circumstance which may permit reformation of a contract.

Shortly before Cermak was injured at the drilling site, USA delivered a "barite hopper" and a supply of barite from the BHM warehouse in Casper, to the drilling site where Cermak worked. A "barite hopper" is a large bin about fifteen feet high into which barite is loaded. Barite is a heavy soil-like substance (commonly referred to as "mud") which, inter alia, adds weight to the drilling fluid column to prevent gas from rising to the surface and prevents drilling fluid from spilling out of the drill pipe as it is unscrewed

during a trip out of the hole. When fully operative, the hopper is rigged to the well, and the rigging includes a walkway directly from the rig to the hopper. At the time of Cermak's accident, the hopper had not yet been attached to the rig. However, Exeter's operations required the use of some barite, so Cermak climbed an exterior ladder (which is an alternate method of gaining access to the hopper, if one is not able to gain access to it directly from the rig) in order to obtain a bucket of barite. Once atop the hopper, there is a railing which serves to prevent a worker from falling off the hopper. While performing that task, he lost his balance and needed to lean against the protective railing. The railing was not secure, and Cermak fell to a platform beneath the hopper, sustaining serious injuries. Midway in the instant proceedings it was established in a partial summary judgment entered by the district court that USA was responsible, under the agreement, for maintaining the hopper and was, hence, potentially liable for Cermak's injuries [1].

There were two actions filed in federal court before the instant case was filed in the state district court. On February 3, 1997, Cermak filed a civil suit in the United States District Court for the District of Wyoming seeking damages from BHM upon the theories of products liability and negligence. Neither USA nor Great West were made parties to that action, though the record does reflect that both had some notice of it, and a demand was made upon Great West to attend the settlement conference scheduled for that case in September 1997. That suit was "settled," though it has generated three additional lawsuits, as well as this appeal. The settlement agreement entered into by Cermak and BHM, without the presence or participation of USA or Great West, contained these recitations which are pertinent to this appeal:

> 1. *Entry of Judgment.* The parties [BHM and Cermak] shall stipulate to a Judgment in the form attached as Exhibit "A" hereto, (the 'Judgment'). The Judg-

---

1. The briefs inform us that all issues with respect to USA are now settled and this appeal, and our

disposition of it, does not affect that settlement.

ment is in the total amount of Nine Hundred Thousand Dollars ($900,000.00), which the parties agree reflects vicarious liability for damages caused by USA Trucking and its agents, representatives and/or employees, for which damage claims were made against Baker Hughes in the action.

As will be subsequently set forth, Cermaks and Baker Hughes will jointly pursue USA Trucking and others for recovery of the $900,000.00. However, nothing in this Agreement is intended to in any way prohibit Cermaks or their agents, assigns or representatives from separately pursuing any claims they may have against any party other than Baker Hughes, its affiliates, officers, directors and employees (with the exception of USA Trucking and the assigned claims described herein) for damages in excess of $900,000.00, or for damages not actually recovered as a result of joint proceedings as set forth herein.

2. *Payment to Cermaks.* Upon execution of this Agreement, and in partial satisfaction of the Judgment, Baker Hughes shall pay the Cermaks the sum of Two Hundred and Fifty Thousand Dollars ($250,000.00) in cash or certified funds (the 'payment'), of which $44,331.00 is attributed to lost wages.

3. *Partial Assignment to Cermaks.* Except as limited in this paragraph Baker Hughes hereby assigns to the Cermaks $^{650}\!/_{900}$, or 72.22%, of any and all claims, rights, causes of action or proceeds therefrom, no matter how denominated, they may have or be entitled to recover against USA Trucking, Great Western [sic] or any other third party arising from or relating to (i) the accident, (ii) the subject matter, circumstances or settlement of the action, (iii) the Consignment Agreement, (iv) the Great Western [sic] policy and (v) any other liability policy issued to USA Trucking that provides coverage for the accident or the action, all of which are referred to collectively as the 'assigned claims.' Baker Hughes reserves and retains all claims, rights, causes of action, portions thereof and proceeds therefrom that are not assigned herein (the 'retained claims'). The retained claims include, but are not limited to, any claims or causes of action, no mat-

ter how denominated, Baker Hughes may have against USA Trucking, Great Western [sic] or any third party for reimbursement of attorneys' fees and costs incurred defending the action or pursuing future actions relating thereto.

4. *Collection of Judgment.* Upon receipt of the payment, the Cermaks hereby stipulate and agree that the Judgment shall only be satisfied through the prosecution of the assigned claims. Upon receipt of the payment, the Cermaks hereby stipulate and agree that they will never attempt to satisfy the Judgment by executing upon the assets of Baker Hughes, its affiliates, officers, directors and employees (with the exception of USA Trucking and the assigned claims as previously described).

5. *Future Actions.* The parties shall jointly prosecute an action or actions on the assigned claims and retained claims (the 'future actions'). Baker Hughes shall bear the costs of the future actions; the parties hereto shall each bear their own attorney's fees in the future actions. The future actions shall only be settled upon mutual agreement of the parties hereto. Baker Hughes shall be entitled to 27.78% of any gross recovery in the future actions; the Cermaks shall be entitled to the balance of any such recovery.

On December 19, 1997, BHM and Cermak filed a suit in the United States District Court for the District of Wyoming seeking damages from Great West upon the theories of breach of contract, bad faith claim denial, and bad faith claims handling. On June 23, 1998, the federal district court granted summary judgment in favor of Great West noting that, "[t]hough the materials on file in this case are extensive, they are largely irrelevant because this case simply involves the interpretation of an unambiguous contract between an insurer and an insured." By order entered on June 23, 1998, that court determined:

The contract at issue ... is unambiguous regarding who is an insured: USA is the only entity listed as an insured under the CGL [comprehensive general liability] policy provided by [Great West]; [BHM] is

listed as an additional insured only under an endorsement to USA's commercial auto policy. There is no endorsement that adds [BHM] to the CGL policy. [BHM] relies upon a certificate provided by [Great West] implying that [BHM] was an additional insured under the CGL policy, however that certificate plainly states that it is for information purposes alone, and that it does not extend or create coverage or confer rights upon any entity. The certificate simply is not part of the agreement between the parties, not only because the certificate so states, but also because the agreement between USA and [Great West] antedates the certificate, and thus its terms cannot be modified by the certificate absent clear evidence of this intent and consideration for the modification. Further, it is clear that the terms of the contract do not allow the addition of an insured merely by the issuance of a certificate—instead, an endorsement is required. No such endorsement exists in this case.

While [BHM] has attempted to confuse the issues by providing evidence of what [BHM] or USA believed their respective coverages to be, the terms of the contract are clear, and as such, those terms govern the contract's interpretation. *See Intern. Surplus Lines v. Wyo. Coal Refining Systems*, 52 F.3d 901, 903 (10th Cir.1995) ('The contract is to be interpreted by an objective standard, and, ordinarily, not by the parties' subjective rendition of the contract.'). The evidence and argument presented by [BHM] might have some bearing on a promissory estoppel or reliance claim, but [BHM] did not bring such claims, thus most of [BHM's] evidence and argument is simply irrelevant where the contract makes plain that [BHM] is an additional insured only under the commercial auto policy.

. . . .

Finally, the Court will deny [BHM's] Motion to Amend Complaint. The Court believes that amendment at this late date would be prejudicial to [Great West]. Further, the Court does not find that the interests of justice require amendment, because [BHM] merely seeks to add garden variety state law claims that may be pursued in state court, where [BHM] is currently pursuing a number of actions related to this case.

To BHM's disadvantage, the record does not reflect much else about this claim. It is evident that the claim BHM was pursuing by means of that action was BHM's theory that the insurance contract between USA and Great West should be reformed to reflect what they intended the additional insured endorsement to cover, *i.e.*, BHM's vicarious liability for USA's negligence. Again to BHM's disadvantage, the record does not clearly reflect why that aspect of the claim was not noticed in its initial complaint, or why BHM was unable to timely amend its complaint to include those issues. As we shall set out in more detail below, that aspect of BHM's theory of recovery could easily have been adjudicated as a part of its overall claim in federal court.

On September 2, 1997, an action was filed by the State of Wyoming, Department of Employment, Workers' Compensation Division, *ex rel.* Charles Cermak, in the Wyoming district court (Converse County, Case No. 12516). The apparent purpose of that filing was for worker's compensation to fully recover any interest it had in judgments in favor of Cermak pursuant to Wyo. Stat. Ann. § 27–14–105 (LEXIS 1999). That case is not affected by this appeal.

On January 30, 1998, while the federal case summarized above was pending, Cermak and BHM filed a suit in the Wyoming district court seeking to recover damages from USA and the owners of USA upon theories of indemnity and breach of contract to provide insurance (Converse County, Case No. 12611). In that case, USA filed a third party complaint against Freberg. On September 24, 1998, after resolution of Cermak's and BHM's federal case, Cermak and BHM filed an amended complaint adding Great West as a defendant in order to further pursue the issues not fully resolved in federal court. Those issues can be summarized as asking for reformation of the insurance contract entered into between USA and Great West. BHM's instant appeal is from that portion of the district court's summary judgment order

denying relief to BHM on its theories of reformation of the insurance contract, as well as the district court's conclusion that Freberg was not Great West's agent as a matter of law (thus eliminating attribution of Freberg's mistake to Great West as an issue). Some additional facts will be included in our discussion of the issues.

## DISCUSSION

■ Although not directly raised by Great West in the district court or in this appeal, we will resolve the issues presented here by concluding that the claims asserted by Cermak and BHM in state district court were res judicata because of the second case litigated in federal court. Great West alludes to a portion of the concept of res judicata in its brief, but we are comfortable that it is our obligation to apply the principles of res judicata on our own motion to the extent the issue was not advanced by Great West. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4405 (1981; and 1999 Supp.). The district court referred to the proceedings in this case as a "miasma." The district court disposed of the issues quite ably and correctly based upon the merits of the claims asserted, but it is our view that the jurisprudence of this Court would not be advanced, indeed it might well suffer serious frustration, if we were to attempt to dispose of the issues as framed by Cermak and BHM, on this record.

■ Complex litigation requires a certain flexibility in the application of the principles of res judicata. 18 Wright, Miller & Cooper § 4401. In evaluation of this case, we rely in part on our concern that the instant case was not so much complex litigation, as that it was irrational in conception and presentation to the various courts in which its adjudication was sought. We are also convinced that our disposition does not represent a change of course with respect to our res judicata jurisprudence, but rather it is an application of currently and widely accepted principles of res judicata that act as a deterrent to the multiple actions that were generated in this particular instance. The disposition of this case in federal court did not depend on any

distinctive federal concerns. Indeed, its adjudication there relied entirely on state law principles, with the exception that the federal forum was available to these litigants because of diversity of citizenship (BHM is a California corporation). An alignment of Wyoming's jurisprudence regarding res judicata, with that of the federal model, is a natural fit because our procedural rules are modeled upon the federal scheme, and indeed are identical in most respects with the federal experience. *See Id.* at 5. A first step along this path is for this Court to fully embrace the substantial progress that has been made toward adoption of the convention that "the broad 'res judicata' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.'" *Id.* § 4402 at 6. That our discussion of this subject in previous decisions of this Court has not more carefully husbanded the distinctive vocabulary of res judicata, and the nuances and refinements that go with that vocabulary, is in part a function of the environment in which those matters have been presented to us, but, perhaps, as well because of an inattentiveness to the very refinements that, by design, make the "broad res judicata phrase" a salutary tool in achieving repose of litigation. *See e.g., Tenorio v. State ex rel. Wyoming Workers' Compensation Div.*, 931 P.2d 234, 238–40 (Wyo.1997); and *Livingston v. Vanderiet*, 861 P.2d 549, 551–52 (Wyo.1993).

■ At this juncture, it is clear that in the instant case we are dealing with "claim preclusion," *i.e.,* the effect of foreclosing any litigation of matters that never have been litigated because of a determination that they should have been advanced in an earlier suit. 18 Wright, Miller & Cooper § 4402 at 6. Just so that the path ahead will be apparent, our ultimate conclusion will be that the federal district court's order of June 23, 1998, granting summary judgment to Great West acts as a bar to any *issues* arising out of that *claim*, whether or not the federal district court actually resolved all issues on their merits and, indeed, despite the fact the federal district court actually referred the parties to state court to pursue some issues. Cermak and BHM could have raised those issues but

failed to do so. In addition, Cermak's and BHM's remedy, if they felt aggrieved by the federal district court's decision, was to appeal that judgment. Having presented their claim in the federal court, the option of litigating it anew in state court was foreclosed by res judicata. *Id.* at 6–11; § 4403 at 15–16; § 4404 at 22–27; and § 4468. Res judicata is not, as a general rule, defeated by error in the initial judgment. *Id.* § 4403 at 17–18; *see Price v. Bonnifield,* 2 Wyo. 80, 86 (1879).

 Claim preclusion principles of res judicata bar the relitigation of issues that were or could have been raised in the first action. *Ten Mile Industrial Park v. Western Plains Service,* 810 F.2d 1518, 1522–23 (10th Cir. 1987); *Klein v. Zavaras,* 80 F.3d 432, 434 (10th Cir.1996); 18 Wright, Miller & Cooper § 4406 at 43–48. In the instant case, it was readily discernible from the outset that all of the issues Cermak and BHM sought to raise were part of a single basic dispute—who was liable, in a legal sense, and in the context of products liability and negligence, to pay for Cermak's injuries, and, incidental to that, who was liable to indemnify BHM for its vicarious liability, if any existed. *Id.* § 4407 at 48–56. The record establishes that BHM was aware of Cermak's injuries and the circumstances surrounding the accident at or very near the time it occurred.

 Because the effect of res judicata is harsh in some instances, there are exceptions to its application. One of its goals is to give, rather than to deny, justice. 18 Wright, Miller & Cooper § 4415. As set out above, we have concluded that the issues which remain unresolved could have been advanced in BHM's initial action against Great West in federal court, and we do not perceive any injustice in its application to these circumstances. *See Id.* at 122. One recognized exception applies where, as here, a part of a single claim has been assigned or reserved. However, we do not look back to Cermak's original claim against BHM in applying res judicata in this instance. Rather, we apply it only to Cermak's and BHM's subsequent claim against Great West. *See Id.* at 122–24. Another exception, consent (agreement between the parties) may persuade a court to

forego application of res judicata. *Id.* at 124. Such an agreement between the parties is not present here. Likewise, we do not perceive the existence of a tacit agreement between the parties to permit splitting of the claim—indeed, although somewhat unartful in its presentation, Great West did resist the second suit in state district court on grounds sounding in the principles of res judicata and, moreover, the federal suit and the state suit were not filed simultaneously. Rather, the issues to be disposed of in the state suit were only augmented once BHM had been unsuccessful in getting a full measure of relief in the federal court. *Id.* at 124–25. Ignorance of the full dimensions of the claim may supply another exception to the rigors of res judicata. *Id.* at 125–28. Here, we see no indication that an assertion of ignorance by BHM could be considered reasonable under the circumstances of this case. All of these parties were sophisticated business entities with very capable attorneys and considerable experience in litigation, especially litigation of this very sort. In addition, we do not discern any special circumstances, gross procedural defects, rights of vital public importance, or unwarranted injustice that would deter application of res judicata in this instance. *Id.* at 129–35. We hold that the issues asserted by Cermak and BHM are barred by res judicata.

As we observed earlier in this opinion, we are also persuaded that the district court's resolution of the merits of these issues in its summary judgment order and decision letter was correct. What BHM failed to resolve in its federal suit was whether Freberg was Great West's agent in the sense that Great West would be bound by the mistake that Freberg made in communicating USA's request to make BHM an additional insured on all of USA's insurance policies. The district court resolved that issue in favor of Great West, discussing several levels of defenses relied upon by Great West. Any pronouncements by us in this regard are, of course, dicta. However, a thorough review of the law applicable to that issue convinces us that the district court's disposition on the merits was correct in all respects. *See American Ref–Fuel Company v. Resource Recycling,*

*Inc.,* 248 A.D.2d 420, 671 N.Y.S.2d 93, 96 (2 Dept.1998) (holding that an entity similarly situated to BHM, in virtually identical circumstances as those we address here, could not seek damages from an insurance broker because of a lack of duty running from the broker to the entity); and 2 Holmes's Appleman on Insurance 2d § 8.3, pp. 326–43 (1996).

## CONCLUSION

For the reasons set out above, the summary judgment order of the district court is affirmed.