BOOMGAARDEN, Justice
[¶1] These consolidated appeals involve the ongoing disputes with the Redland family's irrevocable trust. Appeals S-18-0091 and S-18-0092 relate to Rolly Redland's counterclaim to remove his sister, Lisa Kimsey, as co-trustee for allegedly breaching her fiduciary duties and interfering with trust administration. Appeal S-18-0093 concerns Ms. Kimsey's request to terminate the trust because she claims it is invalid and otherwise fails to achieve the settlors' intended purposes. After a five-day trial, the district court decided not to remove Ms. Kimsey as co-trustee or terminate the trust. Finding no error, we affirm.
ISSUES
[¶2] We state the issues as:
I. Did the district court err when it did not terminate the trust?
A. Does res judicata bar Lisa's claim that the trust is invalid?
B. Does the trust fail to achieve any material purpose?
II. Did the district court err when it retained Lisa Kimsey as co-trustee?
FACTS
[¶3] We detailed the history of the Redland family's trust in Redland v. Redland , 2012 WY 148, 288 P.3d 1173 (Wyo. 2012) ( Redland I ) and Redland v. Redland , 2015 WY 31, 346 P.3d 857 (Wyo. 2015) ( Redland II ). We restate it here to the extent necessary to put the current appellate issues into context.
[¶4] Robert Redland (Robert) and his wife, Irene Redland (Irene), created the Robert Redland and Irene Redland Family Trust dated August 10, 1989 (Redland Family Trust) to hold and manage ranch properties acquired from Robert's father and brother, along with the family's future ranch property acquisitions. Redland I , ¶ 21, 288 P.3d at 1180. Robert, Irene, and their five children[1] each made contributions to acquire the trust property; each were named as beneficial owners; and, Robert and Irene served as the original trustees. Id. In 1995, Robert, Irene, Lisa, Kendrick, and Roalene amended the Redland Family Trust to: provide for the appointment of a successor trustee; require two trustees to serve at all times; create a marital trust for the survivor of Robert or Irene; and revise the buyout provision, inter alia (1995 Amendment).
*354 [2] Irene passed away in 2007 and, pursuant to the 1995 Amendment, the beneficiaries appointed Rolly as co-trustee. Id. ¶¶ 36, 38, 288 P.3d at 1182-83.
[¶5] Thereafter, a dispute arose between Robert and four of his children about Robert's failure to convey additional lands into the Redland Family Trust and about lease agreements Robert executed without approval of his co-trustee. Redland I , ¶¶ 35-39, 288 P.3d at 1182-83. Contentious litigation involving all the beneficial owners ensued with the parties asserting several causes of action. Id. ¶¶ 39-40, 288 P.3d at 1183. Among those claims, Rolly sought to recover additional trust lands and Robert sought to invalidate the trust for violating the rule against perpetuities. Id. ¶¶ 39-41, 288 P.3d at 1183. The district court entered partial summary judgment, concluding the statute of limitations and statute of frauds barred Rolly's claim to recover property, and held a lengthy trial on the parties' remaining claims. Id. ¶¶ 41, 44, 181, 288 P.3d at 1183-84, 1214. While the matter was under advisement, the parties filed a stipulation resolving several of their disputed claims (2010 Stipulation). Id. ¶ 44, 288 P.3d at 1184. Pertinent to this appeal, the 2010 Stipulation requested that the court approve a trust amendment requiring the appointment of a third (tie-breaker) trustee in the event the court determined the trust was valid. Id. The district court approved the amendment after ruling the trust did not violate the rule against perpetuities.[3] Id. ¶ 45, 288 P.3d at 1184.
[¶6] The parties appealed several of the district court's rulings but did not further challenge the trust's validity. Redland I , ¶¶ 4-6, 288 P.3d at 1177-78. In Redland I , we reversed the district court's summary judgment order barring the recovery of additional property and remanded the matter for trial. Id. ¶ 181, 288 P.3d at 1214. Thereafter, the district court ordered Robert to immediately transfer the disputed property to the Redland Family Trust, except it allowed the Manderson Place (Robert's residential parcel) to be transferred on his death. Redland II , ¶ 2, 346 P.3d at 859. Robert appealed. In Redland II , we affirmed the district court's decision on the merits, but we remanded the matter for an order immediately transferring the Manderson Place to the Redland Family Trust, subject to Robert's life estate. Id. ¶¶ 68-69, 346 P.3d at 880.
[¶7] On February 13, 2013, while the second appeal was pending, Robert filed a complaint[4] against the other co-trustees, Rolly and Larry Heiser (the present litigation). In his complaint, Robert requested temporary and permanent injunctions to preclude Mr. Heiser from acting as the third co-trustee and to prohibit further trustee meetings pending further order of the court. Robert also requested a declaratory judgment that the Redland Family Trust is dysfunctional, or alternatively, that the beneficiaries select a new trustee to replace Mr. Heiser.[5] Rolly filed a counterclaim to remove Robert as co-trustee.
[¶8] Robert resigned as co-trustee in September 2013, appointed Lisa as his successor, and added Lisa as a co-plaintiff in the litigation.[6] Lisa moved to terminate the trust, claiming it was impossible to administer due to dysfunction caused by the two factions within the family-Robert and Lisa on one side, and the remaining Redland children on the other. Lisa further argued the trust could no longer achieve its purposes because the family members could not work together, and the family could not obtain preferential tax treatment for a business trust. Rolly opposed the motion, asserting res judicata barred Lisa's claim because the district court previously *355 determined the trust, as amended, was valid. The district court reserved Lisa's motion for trial.
[¶9] Later in the proceedings, Rolly moved to dismiss the complaint as moot; the district court partially granted Rolly's motion. With the court's permission, Robert and Lisa filed an amended complaint[7] on May 6, 2015, which named the other beneficial owners as defendants and asserted the following causes of action: (1) Dissolution of the Trust,[8] (2) Injunction,[9] (3) Declaratory Judgment, (4) Adoption of Operating Agreement, (5) Appointment of Third Trustee, and (6) Enforcement of Trust Agreement Provision on Distribution. Rolly filed a counterclaim seeking Lisa's removal as co-trustee and attorney's fees and costs. Kendrick, Roalene, and Teresa answered separately, but did not assert a counterclaim to remove Lisa.
[¶10] Prior to trial, Robert moved the court to compel the trustees to create and distribute funds to a marital trust as required by the amended trust. After a hearing on Robert's motion, the district court ordered the trustees to create and fund the marital trust, provide an accounting to the beneficiaries and the court from the date of Irene's death through the present, and provide transcripts of all future trustee meetings. In compliance with the court's order, Robert and Lisa filed an accounting on January 4, 2017, along with a transcript of the most recent trustees' meeting, wherein Lisa advocated to approve Robert's request for distributions to the marital trust and reimbursement for trust expenses Robert personally paid through the years. The court took no further action on Robert's motion prior to trial.
[¶11] A five-day bench trial commenced on February 27, 2017. At the trial's conclusion, the district court requested additional briefing on the tax issues raised, whether Robert and Lisa could challenge the validity of the trust post- Redland I , and whether the Uniform Trust Code (UTC) or common law governed the trust. The parties complied and also submitted written closing arguments and extensive proposed findings of fact and conclusions of law.
[¶12] The district court issued its decision letter on November 3, 2017. With respect to the issues on appeal, the district court did not remove Lisa as co-trustee because it determined Lisa did not violate any fiduciary duties and Rolly failed to show gross and willful misconduct to justify Lisa's removal. The district court also did not terminate the Redland Family Trust, concluding: (1) Lisa's claims that the trust is invalid should have been raised in the original trust challenge; (2) "the main and most important reason for the Trust, i.e., to keep the lands and leases together for the Redland family, has not been frustrated" regardless of any adverse tax consequences; (3) "although progress is slow in light of the positions of the Trustees, it is functional from an administration standpoint;" and (4) the trust is not "unlawful, contrary to public policy, or impossible."[10] The district court entered an order and judgment incorporating its decision letter on December 13, 2017. This appeal followed.
STANDARD OF REVIEW
[¶13] After a bench trial, we review "the trial court's findings of fact for clear error and its conclusions of law de novo. "
*356 Shriners Hosps. for Children v. First N. Bank of Wyoming , 2016 WY 51, ¶ 27, 373 P.3d 392, 403 (Wyo. 2016) (citation omitted). Although the trial court's factual findings are not entitled to the limited review afforded a jury verdict, such findings are presumptively correct subject to our examination of all properly admissible evidence in the record. Id. (citation omitted). We do not reweigh disputed evidence and, instead, give due regard to the trial judge who assessed the credibility of the witnesses. Id. (citation omitted). We will not set aside the trial court's findings of fact absent clear error. Id. (citation omitted). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (citation omitted). In our review, "[w]e assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it." Id. (citations omitted). To the extent a specific issue raised on appeal implicates additional standards governing our review, we identify those below.
DISCUSSION
I. Did the district court err when it did not terminate the trust?
[¶14] Lisa claims the trust is invalid and must be terminated because it is an abusive trust as defined by federal tax regulations and, further, that the 1995 Amendment is unlawful because it attempts to modify an irrevocable trust without the consent of all beneficiaries and court approval. Separate from her validity challenge, Lisa contends the trust must be terminated because the trust fails to achieve the settlors' key material purposes to avoid or minimize federal inheritance tax to each settlor's estate, as well as to provide liability protection and include anti-transfer provisions.
A. Validity of the Trust
[¶15] The district court did not reach the merits of Lisa's challenge to the trust's validity. On this issue, the district court ruled:
Robert Redland and Lisa Kimsey challenged the legality and validity of the 1989 Trust in Redland 1. The Supreme Court held it to be a valid and binding Trust. Although they now attack the validity of the Trust on other grounds, it should have been done at the time of the original challenge. Each of the beneficial owners have relied on the efficacy of the Trust, have purchased their share of the Trust, and some have made other improvements to Trust property.
(Emphasis added.) The district court's ruling implies it is based on estoppel principles, though the court did not specify whether its decision rested on res judicata (also referred to as "claim preclusion"), collateral estoppel (also referred to as "issue preclusion"), or judicial estoppel grounds. Regardless, we may affirm the district court's decision on any proper ground appearing in the record. Redland II , ¶ 17, 346 P.3d at 866 (citations omitted). Application of res judicata, collateral estoppel, or judicial estoppel is a question of law that we review de novo. Ultra Res., Inc. v. Hartman , 2015 WY 40, ¶ 58, 346 P.3d 880, 900 (Wyo. 2015) (citation omitted).
[¶16] Res judicata bars the relitigation of claims or causes of action that were or could have been raised in the prior litigation. See, e.g. , Pokorny v. Salas , 2003 WY 159, ¶ 12, 81 P.3d 171, 175 (Wyo. 2003) (citations omitted); Cermak v. Great W. Cas. Co. , 2 P.3d 1047, 1054 (Wyo. 2000) (citations omitted). Res judicata serves several purposes: to promote judicial economy and finality, prevent repetitive litigation, avoid inconsistent results, and increase certainty in judgments. 46 Am. Jur. 2d Judgments § 444 (Nov. 2018 Update) ; Tozzi v. Moffett , 2018 WY 133, ¶ 16, 430 P.3d 754, 759-60 (Wyo. 2018) (citations omitted); In re Paternity of JRW , 814 P.2d 1256, 1264 (Wyo. 1991) (citations omitted).
[¶17] Four elements must be met for res judicata to apply: "(1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them." Tozzi , ¶ 16, 430 P.3d at 760 (citation omitted). Lisa concedes element one is met because the *357 parties in the prior and current litigation are the same. However, she contends that res judicata is inapplicable and does not bar her claim that the trust is invalid because she participated in Redland I in her individual capacity, not as trustee, and solely in relation to the validity of certain lease agreements and not as to the validity of the trust.
[¶18] In analyzing whether res judicata bars Lisa's invalid trust claim, a more detailed review of the issues involved in Redland I is helpful. In Redland I , Lisa's siblings sued Lisa in her individual capacity to void leases that Robert, as trustee, granted to Lisa and her husband without approval of the co-trustee, as required by the 1995 Amendment. Redland I , ¶ 39, 288 P.3d at 1183. The amended complaint specifically sought declaratory judgment that "[t]he Redland Family Trust requires any action of the trust to be approved by two trustees and any action taken without that approval is void;" and "that the lease of trust lands Robert Redland made to Lisa and Mike Kimsey is void for failure to obtain approval by two trustees." Id. Robert, individually and as trustee, counterclaimed and requested declaratory relief that the trust, as amended, was void for violating the rule against perpetuities. Id. ¶¶ 39-41, 288 P.3d at 1183. After a five-day bench trial, the district court determined the trust was valid and, pursuant to the parties' 2010 Stipulation, the court approved the trust amendment to appoint a tie-breaker trustee. Redland I , ¶¶ 44-45, 288 P.3d at 1184-85. The court also voided the lease agreements because they lacked the required co-trustee approval. Id. The parties did not further challenge the twice-amended trust's validity, thereby accepting both the 1995 Amendment and the 2010 stipulated amendment as valid and binding. Id. ¶¶ 4-6, 46, 288 P.3d at 1177-78, 1185.
[¶19] As these facts make clear, the Redland Family Trust, as amended, is the subject matter of both Redland I and the present litigation, thus satisfying res judicata element two. Likewise, the validity of the amended trust was an issue in Redland I and is an issue in the present litigation. Robert expressly requested the court void the amended trust in Redland I , albeit on different grounds than those now alleged, see infra ¶23. Moreover, the validity of the 1995 Amendment (which Lisa approved and executed) was squarely at issue when Lisa's siblings requested the district court to declare that the amended trust required two trustees to enter into lease agreements. Because Lisa put the validity of the trust and the 1995 Amendment directly at issue in the present litigation, res judicata element three is also satisfied.
[¶20] The fourth and final element requires the capacities of the persons to be identical in reference to both the subject matter and the issues between them. Tozzi , ¶ 16, 430 P.3d at 760 (citation omitted). Lisa contends there is "no identity in the capacity of the parties" because she participated in Redland I in her individual "lessee" capacity and participated in the present litigation as an individual beneficiary and as a successor trustee.
[¶21] Generally, "[a] party appearing in an action in one capacity is not thereby bound by the rules of res judicata in a subsequent action in which the party appears in another capacity." 50 C.J.S. Judgments § 1124 (Dec. 2018 Update) ; see also Restatement (Second) of Judgments § 36 (1982). The general rule does not apply, however,
where a party to one action in his or her individual capacity and to another action in his or her representative capacity is in each case asserting or protecting his or her individual rights, where the party will personally benefit from a judgment in his or her representative capacity, or where there is privity between the individual and the representative.
46 Am. Jur. 2d, supra , § 558; see also 50 C.J.S., supra , § 1124 (the judgment is binding where "the circumstances were such that all the person's rights or interests, held in any of his or her capacities, were before the court and involved in its decision"). We applied this exception in Emerson-Brantingham Implement Co. v. Riverton Elevator Co. , 43 Wyo. 67, 297 P. 393, 396-98 (1931) (citation omitted), restating the principle: "it may sometimes happen that all the interests of the party, in [her] several capacities, are *358 before the court in the same litigation; and in that case, the reason of the rule ceases, and [s]he is bound in all characters." Applying that same principle, here, we conclude that Lisa is bound by prior rulings in her individual and successor trustee capacities.
[¶22] The trustee and all trust beneficiaries participated in Redland I , which resolved the validity of the Redland Family Trust, as amended. Lisa's individual rights as a trust beneficiary were at issue then and are at issue now, notwithstanding the fact she is no longer an individual "lessee" and has assumed the additional role of successor trustee. Moreover, Lisa would personally benefit if the district court rendered judgment in Lisa's favor in her capacity as trustee in the present litigation. As Lisa's siblings point out, partition or liquidation of trust assets resulting from termination of the trust would net more for Lisa than if Lisa were required to comply with the amended trust's buyout provision.[11] Lisa is further barred from challenging the validity of the trust by stepping into Robert's representative shoes: "[t]he principles of res judicata ... require that a final adjudication remain binding on both the original parties and their successors in interest." Degiacomo v. City of Quincy , 476 Mass. 38, 369-70, 63 N.E.3d 365 (2016) (citations omitted). Res judicata's fourth element is satisfied under these circumstances.
[¶23] The fact that Lisa now challenges the validity of the amended trust on different grounds from those Robert asserted in Redland I does not preclude us from applying res judicata to bar Lisa's invalid trust claim. We have long held that res judicata bars relitigation of claims or causes of action that could have been raised in prior litigation. Goetzel v. State , 2017 WY 141, ¶ 7, 406 P.3d 310, 311 (Wyo. 2017) (citation omitted). Lisa identifies no new facts or circumstances to demonstrate she could not have raised her present validity concerns in Redland I . To the contrary, her present challenge asserts dubious federal tax regulation, unlawful purpose, and public policy theories,[12] to relitigate the district court's prior ruling upholding the validity of the amended trust-a ruling she did not appeal having endorsed the 2010 Stipulation. Res judicata precludes such piecemeal litigation:
The application of res judicata to those situations where a plaintiff attempts to bring the same claim in a subsequent action *359 against the same or different defendants has a logical basis: It encourages resolution of the plaintiff's claims in a single action, and it forces parties to abide by their agreements.
Eklund v. PRI Envtl., Inc ., 2001 WY 55, ¶ 19, 25 P.3d 511, 518 (Wyo. 2001) (emphasis added).
B. Material Trust Purposes
[¶24] Lisa further contends the trust must be terminated because, as structured, it cannot accomplish its intended goals-to avoid or minimize federal inheritance tax to each settlor's estate, provide liability protection, and prevent voluntary or involuntary transfer or alienation of an ownership interest in the trust. For these reasons, Lisa argues it is impossible to achieve the estate planning purposes of the trust and Wyo. Stat. Ann. § 4-10-411(a) mandates its termination.
[¶25] Lisa correctly notes that one reason Robert and Irene created the Redland Family Trust was for estate planning purposes. Redland II , ¶ 34, 346 P.3d at 871. However, a trust may have more than one material purpose. Shriners Hosps. for Children , ¶¶ 41, 49, 373 P.3d at 406, 408. Here, the district court found that the dominant, "main and most important reason" for the trust was to keep the Redland ranch holdings together to conduct business:
6. Although Robert Redland and Lisa Kimsey go to great lengths claiming that the purpose of the Trust, to minimize the effects of taxation, has been lost due to the Trust's structure, the main and most important reason for the Trust, i.e., to keep the lands and leases together for the Redland family , has not been frustrated. ... Its fundamental purpose of keeping the property together as a whole for the benefit of the Redland Family regardless of the tax consequents is still a legitimate and valid purpose .... The loss of one purpose for the creation of the Trust does not mean that the Trust itself serves no purpose.
....
16. ... The dominant stated purpose of this 1989 Trust with its amendments is to hold the Redland ranch holdings together to conduct business . This purpose still is viable and, quite frankly, why every one of the beneficiaries put property and money into this Trust. ...
(Emphasis added.) This finding is not clearly erroneous. Id. ¶ 27, 373 P.3d at 403.
[¶26] Prior to establishing the trust, Robert, Rolly, and Kendrick each ran livestock on various parcels of land now owned by the trust. Redland I , ¶ 17, 288 P.3d at 1179. Robert and his two sons often operated together, including running their cattle together and supplying veterinary care, breeding, and feed for the cattle. Id. By 1989, their cattle operations had grown and continued to grow. Id. ¶ 20, 288 P.3d at 1180. When Robert's mother passed away, Robert obtained an option to acquire more property. Id. Before exercising the option, Robert and Irene created the family trust. Id. The Trust Agreement expressly states the purpose of the trust is to "hold and manage the trust estate and to carry on business as hereinafter provided." See Am. Nat. Bank of Cheyenne, Wyo. v. Miller , 899 P.2d 1337, 1340-41 (Wyo. 1995) (citations omitted) (looking to the trust instrument to determine the grantor's intended material purpose of the trust). We recognized this purpose in Redland I , stating "[t]he Trust Agreement established the trust for the purpose of holding and managing property." Redland I , ¶ 21, 288 P.3d at 1180. Indeed, the parties originally acquired much of the trust property from Robert's parents, who "hoped [the property] would be held and operated by future Redland generations." Id. ¶ 13, 288 P.3d at 1179. Thus, the district court did not err in finding that the "dominant stated purpose of [the trust] is to hold the Redland ranch holdings together to conduct business."
[¶27] Lisa recognized dual trust purposes at trial, testifying that "the purpose of forming [the] Trust was to hold this mountain ground [together] and [to] do this estate planning." On appeal, she argues that the trust cannot achieve its purposes related to minimizing tax consequences and preventing voluntary or involuntary transfer or alienation of an ownership interest in the trust, and contends that Wyoming law requires termination when a trust "cannot meet one of *360 its material purposes." (Emphasis added.) Lisa misconstrues Wyoming law on this point.
[¶28] Wyoming law prohibits a trust from being terminated when any material purpose of the trust remains. See, e.g. , Wyo. Stat. Ann. § 4-10-411(a) ("[A] trust terminates to the extent the trust is revoked or expires pursuant to its terms, no material purpose of the trust remains to be achieved or the purposes of the trust have become unlawful, contrary to public policy or impossible to achieve." (emphasis added) ); Wyo. Stat. Ann. § 4-10-412(c) ("A noncharitable irrevocable trust may be terminated upon consent of all of the beneficiaries if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust."); Shriners Hosps. for Children , ¶ 52, 373 P.3d at 408 (citations omitted) ("[T]ermination of a trust is not permitted under Wyoming law if the continuance of the trust is necessary to carry out a material purpose of the trust."). The district court correctly found that a viable material purpose of the Redland Family Trust remains (keeping the Redland ranch holdings together to conduct business) even if another purpose has failed (minimizing tax consequences).[13] The history of the parties' cattle operations, how the ranch lands were acquired, and the creation of the family trust to "hold and manage the trust estate and to carry on business," all support the district court's conclusion that continuation of the trust is necessary to achieve a remaining material purpose of the trust-to keep the land and leases together as a whole for the benefit of the Redland family. Wyo. Stat. Ann. §§ 4-10-411(a), -412(c). Thus, the district court did not err when it did not terminate the trust.
II. Did the district court err when it retained Lisa Kimsey as co-trustee?
[¶29] Rolly contends the district court erred when it retained Lisa as co-trustee, because she breached her duties of impartiality and loyalty by "discriminat[ing] against all beneficiaries except herself and Robert Redland," and seeking termination of the Redland Family Trust.[14] Wyo. Stat. Ann. §§ 4-10-802, -803. Rolly further alleges that Lisa's hostility toward the other beneficiaries hampers proper administration of the trust. Finally, he contends the district court improperly relied on the appointment of the tie-breaker trustee to absolve Lisa from her repeated "significant breaches of duty."
[¶30] We review a district court's decision whether to remove a trustee for an abuse of discretion. Forbes v. Forbes , 2015 WY 13, ¶ 33, 341 P.3d 1041, 1053 (Wyo. 2015) (citation omitted). "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances." Acorn v. Moncecchi , 2016 WY 124, ¶ 71, 386 P.3d 739, 760 (Wyo. 2016) (citation omitted). "[T]he ultimate issue is whether or not the court could reasonably conclude as it did." Id. (citation omitted).
[¶31] "A settlor has a great deal of discretion in designating a trustee" and can appoint a trustee who is an interested party, such as a beneficiary, despite inherent conflicts. Forbes , ¶ 30, 341 P.3d at 1052 (citations omitted). Generally, the court will not remove a trustee absent a demonstrated abuse of power. Id. (citations omitted). So *361 long as the trustee executes a trust in good faith and sound discretion, the court has no right to interfere and remove the trustee. Id. (citation omitted).
[¶32] The UTC allows removal of a trustee for breaching a fiduciary duty owed to a beneficiary, Wyo. Stat. Ann. § 4-10-1001(a), (b)(vii), and in the following circumstances:
(i) The trustee has committed a serious breach of trust;
(ii) Lack of cooperation among cotrustees substantially impairs the administration of the trust;
(iii) Because of unfitness, unwillingness or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; or
(iv) There has been a substantial change of circumstances, or removal is requested by all of the qualified beneficiaries, and the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.
Wyo. Stat. Ann. § 4-10-706(b).[15] However, courts are more reluctant to remove a settlor-appointed trustee than one who is court-appointed. Forbes , ¶ 30, 341 P.3d at 1052 (citation omitted). We require an enhanced showing of gross and willful misconduct to justify removing a settlor-appointed trustee. Shriners Hosps. for Children , ¶ 97, 373 P.3d at 416 (quoting Forbes , ¶ 29, 341 P.3d at 1052 ).
[¶33] In denying Rolly's removal claim, the district court reasoned:
12. Lisa Kimsey was appointed as Trustee by Robert Redland one of the original settlors. This Court cannot find that her actions or inactions amounted to a violation of her fiduciary duties owed to the Trust. Although Ms. Kimsey and Mr. Rolly Redland do not many times agree as to how the administration of this Trust should occur, with Mr. Frank as the third Trustee, a thorough and sometimes exhaustive discussion of the issues has occurred with final votes being taken. The Trust is not dysfunctional in that the Trustees have voted on many controversial issues with a decision being articulated and followed.
....
14. There has been hostility between the desires Lisa Kimsey has and the desires for the Trust that Rolly Redland has. While there were only two Trustees they were at an impasse. Since the third Trustee has been appointed by the Court that impasse has been eliminated. It is true the Trustees have the sole obligation to manage the Trust assets. The Trustees could kick everyone off the holdings and require bids from the beneficial owners or third parties, or require the Trust beneficiaries or third parties to negotiate for utilization of the Trust property. They however have chosen to allow usage by the beneficiaries. That is but one of the options available to them. It has been difficult for the Trustees to accommodate other beneficial owners' usage along with their own. They have essentially resorted to what has worked in the past. They have found that to be workable, albeit not to everyone's satisfaction. The fact that the Trustees consult from time to time with the beneficiaries is their decision. It's not right it's not wrong. The fact that they sometimes don't consult with the beneficiaries is their decision. It's not right, it's not wrong. They have an obligation to manage the Trust as they can agree. Great weight is given to the selection of Lisa Kimsey as Trustee since her selection was made by Robert Redland, one of the original settlors. Likewise, Rolly Redland was appointed to replace Irene Redland. Weight is to be given his appointment as Trustee whether it was done by the settlor Robert Redland or the beneficiaries.
*362 15. Hostility between Trustees and beneficial owners is likewise not unusual since the reason for the Trust is to remove the beneficial owners' ability to use Trust assets without considering the settlors' intent. Hostility alone is insufficient to remove a Trustee. That hostility must interfere with the proper administration of the Trust. "Hostility may naturally exist in trust relationships since trusts are usually created to withhold control of the trust principal from the beneficiaries. Hostility between the trustee and the beneficiaries of the trust alone is insufficient to require the removal of the trustee. To be sufficient to require removal, the hostility must interfere with the proper administration of the trust." Shriners Hosps. For Children v. First N. Bank of Wyoming , 2016 WY 51, ¶ 95, 373 P.3d 392, 416 (Wyo. 2016) citing Forbes v. Forbes , 2015 WY 13, ¶ 96, 341 P.3d at 1065 (quoting In re Trust Created by Hill for benefit of Schroll , 499 N.W.2d 475, 485 (Minn.Ct.App.1993) ). Removing a Trustee appointed by a settlor requires an enhanced showing to justify the same, such as gross and willful misconduct. Id. at ¶ 97. I find that Lisa Kimsey and Rolly Redland do not fall into that category. ...
(Emphasis added.) Viewing the record in the light most favorable to Lisa, we conclude the district court did not abuse its discretion by retaining Lisa as a co-trustee.
A. Duty of Impartiality
[¶34] Rolly contends Lisa improperly advocated for Robert over the other beneficiaries. First, Rolly points to Lisa's failure to assist him (after many demands) in obtaining Robert's signature on assignment documents to convey trust property to the trust as ordered by the district court. Lisa testified that she did not ask Robert to sign the transfer documents as Rolly requested because Robert moved to stay the district court's order pending an appeal. Lisa admitted that she did not assist Rolly after the district court denied the stay but claimed her assistance was unnecessary because Rolly already took steps to transfer the property. The district court weighed the conflicting evidence on this issue and reasonably concluded that Lisa's inaction did not amount to a violation of her fiduciary duty.
[¶35] Moreover, Rolly failed to demonstrate that Lisa's inaction seriously harmed the trust.
Mismanagement of the estate arising from a misconception or misunderstanding of the trustee's duties may be a ground for removal, but not if no serious harm has been done and no dishonesty or want of capacity is indicated.
Forbes , ¶ 32, 341 P.3d at 1052-53 (citation omitted) (emphasis added); see also Shriners Hosps. for Children , ¶ 94, 373 P.3d at 415-16 (quoting Forbes ). Rolly, as co-trustee, successfully transferred all of the state leases and BLM allotments by providing to the agencies a copy of the court order and copies of the amended trust, and he obtained a contempt order to transfer the Manderson Farm. Thus, even if Lisa should have actively participated in transferring trust property while Robert appealed the district court's order, the record supports the district court's determination that Lisa's inaction did not hamper transfer of the trust property or otherwise seriously harm the trust.
[¶36] Rolly also claims Lisa's request to fund the marital trust and her insistence that the trust reimburse Robert for alleged trust expenses he personally paid reflected her lack of impartiality. We disagree. As a trustee, Lisa had a duty to act in the best interest of the beneficiaries, and an equal duty to defend the settlor's intentions. Shriners Hosps. for Children , ¶ 57, 373 P.3d at 409 (citation omitted); Wyo. Stat. Ann. § 4-10-801 ; -802. "A fundamental duty of a trustee is to carry out the terms of the trust." Id. (citation omitted). The 1995 Amendment required the trustees to establish a marital trust to provide income for the survivor of Robert or Irene. The record shows that the trustees did not establish or fund the marital trust as required by the trust's terms. Lisa advocated for compliance with the trust's terms and for reimbursement of trust expenses Robert personally paid so that the trustees could determine if funds were available to make distributions of net *363 income to all of the beneficial owners. The district court correctly determined that these circumstances did not reflect partiality or rise to the level of gross and willful misconduct as required to justify Lisa's removal as a settlor-appointed co-trustee.
B. Duty of Loyalty
[¶37] Next, Rolly asserts that Lisa breached her duty of loyalty by asking the court to terminate the Redland Family Trust. Although Rolly admits there is no precedent mandating this conclusion, he contends that Lisa's request to terminate the trust is in conflict with the dominant purpose of the trust and contrary to Lisa's statutory duty to "administer the trust solely in the interests of the beneficiaries." Wyo. Stat. Ann. § 4-10-802(a). As noted above, any notion that Lisa had a singular obligation to act solely in the beneficiaries' best interest is flawed. Shriners Hosps. for Children , ¶ 57, 373 P.3d at 409 (citation omitted). Lisa further counters that the UTC provides express statutory authority for a trustee to seek to terminate a trust and, therefore, she did not breach a fiduciary duty by pursing that remedy.
[¶38] Lisa sought to terminate the trust on numerous grounds addressed in Issue I, supra . The UTC authorizes courts to terminate trusts for various reasons, including the inability to administer the trust effectively. See , e.g. , Wyo. Stat. Ann. §§ 4-10-411(a), 412, 413, 415. The UTC also authorizes a trustee to commence trust termination proceedings. Wyo. Stat. Ann. § 4-10-411(b). In light of Lisa's and Rolly's allegations and testimony concerning hostility, dysfunction, and difficulty administering the trust, and in the absence of any authority to suggest Lisa's request as a co-trustee to terminate the trust amounts to a breach of loyalty, the district court's determination that Lisa did not violate her duty of loyalty stands.
C. Hostility
[¶39] Finally, Rolly claims Lisa's hostility toward the other beneficiaries and failure to communicate with them has hampered trust administration and therefore warrants her removal. As the district court correctly noted, "[h]ostility between the trustee and the beneficiaries of the trust alone is insufficient to require the removal of the trustee. To be sufficient to require removal, the hostility must interfere with the proper administration of the trust." Forbes , ¶ 96, 341 P.3d at 1065 (citation omitted). The district court found that even though Rolly and Lisa were at an impasse over some trust matters at times, Mr. Frank's appointment as the "tie-breaker" trustee alleviates deadlocked situations. The record supports this finding.
[¶40] At trial, both Rolly and Lisa discussed the hostility between the two factions of beneficial owners. Despite such hostility, the evidence at trial demonstrated the parties were able to resolve their differences to the extent necessary to permit the beneficiaries to utilize the trust property both before and after the appointment of a tie-breaker trustee. Specifically, Mr. Frank, the third (tie-breaker) trustee, testified that, although there is tension over usage of trust property, the beneficiaries follow the decisions made by the majority of the trustees even if disagreement exists with respect to the decision. One of the beneficiaries, Kendrick, testified that trust administration has improved with the appointment of Mr. Frank:
A. ... since Dan Frank, that third trustee has come on, he has a very real understanding of how to run this type of an operation, and they are making good strides now of rolling this sucker back in and making it work. Dan has come up with some excellent ideas with his background.
....
Q. Do you have a belief that over time that this Trust can actually start to run smoother?
A. It's already doing that, since Dan-Dan Frank, the third trustee came on board, it's-it's rolling good. It isn't without its bumps and it's not expected to. From where it was to where it is today, it's a huge, huge improvement.
[¶41] Additionally, the district court has, over time, assisted with trust administration, further avoiding any need to remove a trustee:
the removal of an executor or trustee is harsh and severe; it is serious; it is a *364 drastic action; it should not be done unless clearly necessary; if the court can adjust the disputed matters, the removal should not be made ....
Shriners Hosps. for Children , ¶ 97, 373 P.3d at 416 (quoting Forbes , ¶ 29, 341 P.3d at 1052 ) (emphasis added). For example, the district court required the trustees to set procedures for trustee meetings and file transcripts of those meetings with the court. The district court ordered the trustees to retain an impartial CPA within 60 days and set additional deadlines to pay out any net income for 2013 through 2016 after learning the trustees failed to determine and distribute the trust's net income for those years. The district court also ordered the trustees to establish and fund the marital trust, determine whether Robert is entitled to reimbursement for alleged trust expenses he personally paid, and determine whether the trust has an obligation to pay prior uncashed divided checks. Evidence regarding the administrative efforts of the third (tie-breaker) trustee and, from time to time, the district court, supports the district court's conclusion that hostility did not require Lisa's removal.
[¶42] In sum, the district court did not err in concluding that Lisa did not violate her fiduciary duties-her duties of impartiality or loyalty-and that her actions did not amount to gross and willful misconduct. The district court, having facilitated resolution of trust disputes in a manner to avoid the necessity of removal, Shriners Hosps. for Children , ¶ 97, 373 P.3d at 416, and viewing the record before the district court in the light most favorable to Lisa, we conclude the district court did not abuse its discretion when it retained Lisa as a settlor-appointed co-trustee.
CONCLUSION
[¶43] The district court did not err when it did not terminate the Redland Family Trust because res judicata bars Lisa's claim that the Redland Family Trust, as amended, is invalid. Nor did the district court err in determining that continuing the trust is necessary to hold and preserve the Redland family's ranch properties. Finally, the district court did not abuse its discretion when it retained Lisa as co-trustee of the trust. We affirm the district court's order and judgment.

The five children are Rolly Redland, Kendrick Redland, Roalene Redland-McCarthy, Teresa Shelton, and Lisa Kimsey. For ease of reference, we will refer to each party by their first name.

The 1995 Amendment admitted into evidence was not signed by Rolly or Teresa; however, the Trust Agreement may be amended "upon the agreement of a majority of the beneficial owners."

Pursuant to the 2010 Stipulation, Ken Pike became the third (tie-breaker) trustee. Larry Heiser replaced Mr. Pike in 2011. After Mr. Heiser resigned, the parties stipulated to the court appointing LaVerne Lofink. Mr. Lofink resigned in 2013, and the court appointed Larry L. King in his stead. Mr. King resigned on May 19, 2014, and Rolly moved the court to appoint another trustee. On September 17, 2015, the district court appointed Daniel B. Frank, who continues to serve as the third co-trustee.

Robert filed the original complaint in his capacity as trustee.

After Robert filed the complaint, Mr. Heiser resigned as co-trustee and was dismissed from the litigation.

The parties' modified the caption to name as co-plaintiffs Robert, in his capacity as former trustee, and Lisa, in her capacity as current trustee.

Robert and Lisa filed the amended complaint individually and in their representative capacities (Robert as former co-trustee and Lisa as current co-trustee).

At the time of trial, Robert and Lisa requested the district court terminate the trust because "(a) the Trust fails to achieve the Settlor's intent; (b) the Trust doesn't conform to Federal law and is therefore 'unlawful;' (c) and the operation of the Trust is dysfunctional."

After Lisa's appointment as trustee, Rolly, Kendrick, Roalene and Teresa, as beneficiaries, purportedly removed Lisa as co-trustee and appointed Roalene as her successor. On September 17, 2015, the district court issued an order confirming Lisa remained a co-trustee because the other beneficiaries lacked authority to remove her and voiding all actions taken by the beneficiaries unless later ratified by the three valid cotrustees-Lisa, Rolly, and Mr. Frank. This order effectively resolved claims two (injunction) and three (declaratory judgment) of the amended complaint.

The district court made additional findings of fact and conclusions of law that are not pertinent to the issues on appeal.

The buyout provision included in the 1995 Amendment provides a valuation formula and allows the purchaser(s) to pay the seller(s)' share of trust assets over a twenty-year period without interest.

Lisa's counsel conceded during oral argument that if the Internal Revenue Service concludes that a trust qualifies as an abusive trust, it disregards the entity for tax purposes only. A taxing authority's designation of an abusive trust does not otherwise invalidate or terminate a trust that is legal under state law. See, e.g. , Helvering v. Clifford , 309 U.S. 331, 335, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940) (stating that a trust valid under state law is not a conclusive determination for tax purposes); Richardson v. Comm'r of Internal Revenue , 509 F.3d 736, 742 (6th Cir. 2007) (citations omitted) (stating trusts valid under state law may not be "legitimate for federal income tax purposes"); Zmuda v. Comm'r of Internal Revenue , 79 T.C. 714, 720 (1982), aff'd , 731 F.2d 1417 (9th Cir. 1984) (citations omitted) (explaining that tax law is applied according to the substance of the transaction regardless of whether the entity has a separate existence recognized under state law).
As to whether a trust has an unlawful purpose or is against public policy, the UTC comments explain:
A trust with a purpose that is unlawful or against public policy is invalid. Depending on when the violation occurred, the trust may be invalid at its inception or it may become invalid at a later date. The invalidity may also affect only particular provisions. Generally, a trust has a purpose which is illegal if (1) its performance involves the commission of a criminal or tortious act by the trustee; (2) the settlor's purpose in creating the trust was to defraud creditors or others; or (3) the consideration for the creation of the trust was illegal. See Restatement (Third) of Trusts Section 28 cmt. a (Tentative Draft No. 2, approved 1999); Restatement (Second) of Trusts Section 60 cmt. a (1959). Purposes violative of public policy include those that tend to encourage criminal or tortious conduct, that interfere with freedom to marry or encourage divorce, that limit religious freedom, or which are frivolous or capricious.See Restatement (Third) of Trusts Section 29 cmt. d-h (Tentative Draft No. 2, 1999); Restatement (Second) of Trusts Section 62 (1959).
Shriners Hosps. for Children , ¶ 47, 373 P.3d at 407 (emphasis added). As the district court correctly found, none of these circumstances were successfully argued or evidenced.

Lisa criticizes the trust's structure because it failed to avoid or minimize Irene's estate taxes as intended. She notes that the tax accountant included the value of Irene's one-seventh share of trust assets in Irene's federal estate tax calculations because federal regulations treated the trust as a "grantor trust"-as opposed to an irrevocable trust-due to the initial trustees' power to control the trust assets and Irene's right to possess and enjoy the trust property during her lifetime. Irene passed in 2007 and the parties were apprised of the taxation issues related to her estate at that time. Since then, none of the parties have requested modification of the trust terms to meet tax objectives as we would expect if, as Lisa argues, failing to meet those objectives defeated the dominant purpose of the trust. See, e.g. , Wyo. Stat. Ann. § 4-10-417 ("To achieve the settlor's tax objectives, the court may modify the terms of a trust in a manner that is not contrary to the settlor's probable intention as proved by a preponderance of the evidence. The court may provide that the modification has retroactive effect."). The parties could similarly request the court to modify the trust to address liability protection and anti-transfer provisions. Wyo. Stat. Ann. § 4-10-412 ; -413.

Kendrick, Roalene, and Teresa join Rolly in appealing this issue.

The district court concluded that the UTC governed the Redland Family Trust because the parties stipulated to its application at trial. On appeal, Rolly and Lisa deny any such stipulation, but concede that applying UTC standards does not affect the outcome of their respective arguments. Moreover, neither party moved to set aside the district court's conclusion or raised the issue on appeal. We therefore apply the UTC.